UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

STARBUCKS CORPORATION, a Washington
corporation; and STARBUCKS U.S. BRANDS
L.L.C., a Nevada Corporation,

        Plaintiffs,

  -v-                                                                                       No. 01 Civ. 5981 (LTS)(THK)

WOLFE'S BOROUGH COFFEE, INC., a New
Hampshire corporation d/b/a BLACK BEAR
MICRO ROASTERY,

        Defendant.

-----------------------------------------------------------x

## OPINION AND ORDER

In this action, Plaintiffs Starbucks Corporation and Starbucks U.S. Brands LLC (collectively "Plaintiff"), seek injunctive relief against Defendant Wolfe's Borough Coffee, Inc., d/b/a Black Bear Micro Roastery ("Defendant" or "Black Bear"), on their federal trademark infringement and unfair competition claims brought pursuant to the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a); federal and state trademark dilution claims brought pursuant to the newly-amended Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. §§ 1125(c) and 1127, and New York Gen. Bus. Law § 360-l, respectively; and their common-law unfair competition claim. The Court has jurisdiction of the federal claims in this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1332(a). The Court has supplemental jurisdiction of Plaintiff's state statutory and common law claims pursuant to 28 U.S.C. §§ 1367 and 1338(b).

PROCEDURAL HISTORY AND FACTUAL BACKGROUND

The case was tried to the Court over two days on March 15 and March 17, 2005. The Court considered the stipulated facts, trial testimony and evidence carefully, while also observing the demeanor of the witnesses, and considered thoroughly all of the written and oral submissions of counsel. In its December 23, 2005, Opinion and Order[1] (the "December 2005 Decision"), the Court found that Plaintiff had failed to carry its burden of demonstrating its entitlement to relief and ordered that judgment be entered in Defendant's favor with respect to all of Plaintiff's claims; Plaintiff appealed.

Under the FDTA as in effect at the time this Court rendered its December 2005 Decision, a showing of actual dilution was required to demonstrate entitlement to injunctive relief. Moseley v. V. Secret Catalogue, Inc., 537 U.S. 418, 433 (2003). Signed into law on October 6, 2006, the Trademark Dilution Revision Act of 2006 ("TDRA") amended the FTDA to provide, inter alia, that the owner of a famous, distinctive mark is entitled to an injunction against the user of a mark that is likely to cause dilution of the famous mark. 15 U.S.C. § 1125(c)(1). In light of the enactment of the TDRA, the Second Circuit vacated the earlier judgment and remanded the case for further proceedings. In its remand decision, the Second Circuit noted that this Court had already considered "likelihood of trademark dilution" in connection with New York state law, but ordered reconsideration nevertheless because "it is not clear that [the New York] statute is coextensive with the amended [federal] statute [and] the district court's treatment of the New York statute does not permit a review of whether the analysis conforms with the

---

[1] Starbucks Corp. v. Wolfe's Borough Coffee, Inc., No. 01 Civ. 5981 (LTS)(THK), 2005 WL 3527126 (S.D.N.Y. Dec. 23, 2005).

amended statute." Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 477 F.3d 765, 766 (2d Cir. 2007). Accordingly, the Court has reconsidered Plaintiff's claim for injunctive relief in light of the TDRA's amendment to the FTDA.

The parties submitted briefs following the remand, and agreed that no further evidentiary proceedings were required. Having considered thoroughly all of the arguments by counsel on remand, and for the following reasons, the Court finds that Plaintiff has failed to carry its burden of demonstrating its entitlement to relief under the FTDA, as amended. For substantially the reasons detailed in the December 2005 Decision and as explained below, the Court finds that Plaintiff has also failed to demonstrate its entitlement to relief on its: (1) federal trademark infringement and unfair competition claims brought pursuant to the Lanham Act; (2) state trademark dilution claims brought pursuant to New York Gen. Bus. Law § 360-1; and (3) unfair competition claim under the common law. The December 2005 Decision, which is hereby incorporated by reference insofar as it addresses the relevant facts and Plaintiff's non-FTDA claims, and this Opinion and Order, constitute the Court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

The Court's findings as to the material background facts of this matter are detailed in the December 2005 Decision.

DISCUSSION

The principal issue for examination on remand is whether, in light of the 2006 amendment to the FTDA, Plaintiff is entitled to injunctive relief based on the likelihood that Defendant's challenged activities will dilute Plaintiff's rights in its Starbucks trademarks. To

obtain such relief, Plaintiff must demonstrate that Defendant's use of its "Mr. Charbucks" and "Mister Charbucks" marks for one of its coffee blend products creates associations arising from similarity to the Starbucks marks that are likely to impair the distinctiveness of the Starbucks mark or tarnish that mark by harming its reputation. In the December 2005 Decision, the Court found the record insufficient to demonstrate the actual dilution that was required under then-current law.

The TDRA made a number of significant changes to the FTDA, three of which are relevant to the instant matter.[2] First and foremost, a plaintiff must merely show a "likelihood of

---

[2] The amended FTDA reads in relevant part as follows:

(c) Dilution by blurring; dilution by tarnishment.

    (1)    Injunctive relief. Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

    (2)    Definitions.

        * * *

    (B)    For purposes of paragraph (1), "dilution by blurring" is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:

        (i)    The degree of similarity between the mark or trade name and the famous mark.

dilution" rather than actual dilution. 15 U.S.C. § 1125(c)(1). Second, the amended statute explicitly recognizes two types of dilution: dilution by blurring and dilution by tarnishment. 15 U.S.C. § 1125(c)(2). Third, the amended statute defines both blurring and tarnishment, setting forth six non-exclusive factors for courts to consider in assessing the likelihood of dilution by blurring. 15 U.S.C. § 1125(c)(2)(B).

Dilution by Blurring Claims

    FTDA Claim

"In previous cases, blurring has typically involved 'the whittling away of an established trademark's selling power through its unauthorized use by others upon dissimilar products.' Thus, dilution by 'blurring' may occur where the defendant uses or modifies the

---

|     |       |                                                                                                                   |
|-----|-------|-------------------------------------------------------------------------------------------------------------------|
|     | (ii)  | The degree of inherent or acquired distinctiveness of the famous mark.                                            |
|     | (iii) | The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.          |
|     | (iv)  | The degree of recognition of the famous mark.                                                                     |
|     | (v)   | Whether the user of the mark or trade name intended to create an association with the famous mark.                |
|     | (vi)  | Any actual association between the mark or trade name and the famous mark.                                        |
| (C) |       | For purposes of paragraph (1), "dilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark. |

15 U.S.C.A. § 1125(c) (West Supp. 2008).

plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." Deere & Co. v. MTD Prods., 41 F.3d 39, 43 (2d Cir. 1994), quoting Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026, 1031 (2d Cir. 1989). Public association of the trademark with other goods and services, injuring the selling power of the plaintiff's mark as a unique identifier, constitutes such blurring. See Hormel Foods Corp. v. Jim Henson Prods. Corp., 73 F.3d 497, 506 (2d Cir. 1996). Mere mental association among consumers between the senior and junior mark without more was, however, insufficient to establish dilution by blurring. Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 118-119 (2d Cir 2006).

The amended FTDA defines dilution by blurring similarly, as "[an] association arising from the similarity between a mark or trade name and a famous mark that <u>impairs the distinctiveness</u> of the famous mark." 15 U.S.C.A. § 1125(c)(2)(B) (emphasis added). The statute instructs the Court to consider all relevant factors, six of which are specifically identified: "(i) [t]he degree of similarity between the mark or trade name and the famous mark[;] (ii) [t]he degree of inherent or acquired distinctiveness of the famous mark[;] (iii) [t]he extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark[;] (iv) [t]he degree of recognition of the famous mark[;] (v) [w]hether the user of the mark or trade name intended to create an association with the famous mark[;] and (vi) [a]ny actual association between the mark or trade name and the famous mark."[3] Id.

---

[3] Under New York law, courts generally consider six factors in determining the likelihood of dilution by blurring: (i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the senior mark; and (vi) the renown of the junior mark. The Sports

In the December 2005 Decision, the Court found that, although the evidence indicated that Defendant's principal intended, in adopting the "Charbucks" moniker, to evoke associations with the sort of dark-roasted coffee purportedly favored by Starbucks' clientele, the evidence did not demonstrate any actual diminution of the capacity of the Starbucks marks to serve as unique identifiers of Starbucks' products by reason of Defendant's commercial activities under the former provisions of the FTDA, or any likelihood of such diminution under New York state law. See Starbucks, 2005 WL 3527126, at *9. The Court now turns to an examination, under the amended provisions of the FTDA, of whether the record demonstrates likelihood of dilution of the Starbucks marks by Defendant's use of the "Mr. Charbucks" and "Mister Charbucks" marks.

### A. Similarity of the Marks

In addressing Plaintiff's trademark infringement claim in its December 2005 Decision, the Court found strong similarity between the core term "Charbucks" and Plaintiff's "Starbucks" mark, but also explained that, as that term was used by Defendant in the "Mr. Charbucks" name for its coffee blend and in the packaging of Defendant's product, the similarity factor favored Plaintiff only slightly, if at all, in assessing the likelihood of consumer confusion as to the source of Defendant's products or as to a connection between Starbucks and Black Bear.

The question of similarity is also highly relevant in the dilution context. Plaintiff's and Defendant's marks are far from identical. "In order to establish dilution by

---

Authority, Inc. v. Prime Hospitality Group, 89 F.3d 955, 966 (2d Cir. 1996).

blurring, the two marks must not only be similar, they must be 'very' or 'substantially' similar." Hormel Foods Corp., 73 F.3d at 503, quoting Mead Data Central, 875 F.2d at 1029. As explained in the December 2005 Decision, Defendant's marks appear on packaging very different from that used by Starbucks. There is no evidence that Defendant uses "Charbucks" as a stand-alone term. Rather, it is used with "Mr." or "Mister" on Defendant's distinctive packaging or in product lists. For these reasons, the marks at issue here are not substantially similar. This dissimilarity alone is sufficient to defeat Plaintiff's blurring claim, see Hormel Foods Corp., 73 F.3d at 506, and in any event, this factor at a minimum weighs strongly against Plaintiff in the dilution analysis.

### B. Distinctiveness of the Famous Mark

In the December 2005 Decision, the Court found that:

> [o]ver the past 33 years, Starbucks has grown from a single coffee shop to over 8,700 retail locations across the United States and the world . . . From the year 2000 to 2003, Starbucks spent over $136 million on advertising, promotion and related marketing activities . . . [and] [v]irtually all of Starbucks' advertising prominently features (or, in the case of radio, mentions) the Starbucks Mark . . . [I]n recent years, Starbucks products or retail stores have been featured prominently in a number of popular motion pictures and television shows which have been seen by millions of viewers in theaters or on television or video.

Starbucks, 2005 WL 3527126, *1-2 (citations omitted). For substantially these reasons, as well as the reasons detailed in the Court's other findings relating to distinctiveness in the December 2005 Decision, the distinctiveness factor favors Plaintiff in the blurring analysis.

### C. Substantially Exclusive Use of Famous Mark by Owner

> Starbucks devotes substantial effort to policing its registered Starbucks Marks. Starbucks has a policy of following up on uses that it deems to be infringing and demanding that the use be terminated. Starbucks routinely sends cease and desist letters and, if necessary, commences litigation in support of these efforts.

Starbucks, 2005 WL 3527126, *2 (citations omitted). In its December 2005 Decision, the Court also recognized Starbucks' efforts, including the expenditure of substantial time and money, in advertising and promoting the Starbucks Marks throughout the United States and elsewhere. Id. This factor also weighs in favor of Plaintiff in the blurring analysis.

### D. Degree of Recognition of the Famous Mark

> Over the past 33 years, Starbucks has grown from a single coffee shop to over 8,700 retail locations across the United States and the world. Starbucks is now the largest and best-known purveyor of speciality coffees and coffee products in North America. Starbucks owns, or operates through affiliates and licensees, more than 6,600 retail stores in the United States and Canada . . . More than 20 million customers visit Starbucks' United States stores each week.

Starbucks, 2005 WL 3527126, *1 (citations omitted). This factor, too, weighs in favor of Plaintiff in the blurring analysis.

### E. Intent to Create an Association with the Famous Mark

As noted above, Defendant Black Bear intended to create an association with Plaintiff's mark by wordplay – specifically, by alluding to the dark roasted characteristic of the Starbucks product. Such intent is not sufficient in and of itself, however, to demonstrate a likelihood of dilution by blurring. In the blurring context, the ultimate question is whether the

intended association is likely to impair the distinctiveness of Plaintiff's famous mark. Here, the record makes clear that the distinctiveness of the character of Starbucks coffee products is key to the achievement of Defendant's stated goal, which is to signal to purchasers that "Mr. Charbucks" is a very dark roast and unlike Defendant's other coffee products. Such an intended association, especially where, as here, Defendant's mark is not substantially similar to Plaintiff's, is not indicative of bad faith or of an association likely to cause dilution by blurring. Cf. Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 267 (4th Cir. 2007) (no trademark blurring found where parody mimics and/or associates with the famous mark, but does not simultaneously communicate that it is the famous mark). Accordingly, the evidence is insufficient to establish Defendant's intent to create an unlawful association with its famous mark and this factor weighs against Plaintiff.

F. Actual Association with the Famous Mark

The Court must also consider any actual association between the mark or trade name and the famous mark. 11 U.S.C. §1125(c)(2)(B)(vi). Survey results do show, as explained in the December 2005 Decision, some consumer association between the spoken, standalone term "Charbucks" and Plaintiff's Starbucks mark. Starbucks, 2005 WL 3527126, *5. However, as noted in that Decision, "[the evidence] is insufficient to make the actual confusion factor weigh in Plaintiff's favor to any significant degree." Id.

As found in the December 2005 Decision and as shown in the foregoing examination of the factors specified in the amended FTDA, Starbucks' marks are distinctive and famous. Thus, several of the specified factors weigh in its favor. However, Defendant's marks, as used in commerce, are not substantially similar to Plaintiffs' Starbucks marks, and the

association Defendant intended to evoke in consumers' minds through its use of a playful dissimilar mark is not one that would be likely to dilute the Starbucks marks as unique identifiers of Starbucks' goods and services. Rather, it is dependent on an identification of those marks with Starbucks' own products and a characteristic of the taste of those products. The record is, therefore, insufficient to demonstrate the requisite likelihood that the association arising from the similarity of the core terms is likely to impair the distinctiveness of Starbucks' mark, and Plaintiff is not entitled to injunctive relief under that statute. Cf. N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC, 293 F.3d 550, 558 (2d Cir. 2002) (refusing to grant an injunction where parodic use of a similar mark emphasized that a casino offered possible profits and risks similar to those on the New York Stock Exchange).

New York Statutory Claim

Under New York dilution law, courts generally consider six factors in determining the likelihood of blurring: (i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the senior mark; and (vi) the renown of the junior mark. The Sports Authority, Inc., 89 F.3d at 966. For substantially the reasons explained above, the similarity of the marks and the predatory intent factors favor Defendant because the marks, as used, are dissimilar and the record does not demonstrate a predatory intent on Defendant's part. In light of the principal concern of dilution law – diminution of the capacity of the senior user's mark to serve as a unique identifier – these factors weigh more heavily in the analysis than the renown and product similarity factors which do, for substantially the reasons explained above and those laid out in the December 2005

Decision, favor Plaintiff.

As to the consumer sophistication factor, Defendant's CEO and co-owner gave unrebutted testimony at trial that his consumers were highly discriminating, generally repeat customers, including many retailers. See Tr. Trans. 79:22-25, 93:23-25, 94:4-6, 94:17-18; W.W.W. Pharmaceutical Co. v. Gillette Co., 984 F.2d 567, 576 (2d Cir. 1993) (finding that "retailers are assumed to be more sophisticated buyers"). Starbucks' Director of Brand Management testified at trial that Starbucks' customers are sophisticated enough to have a "specific set of expectations around the drink they have enjoyed in store" and that Starbucks is a premium product priced toward the high end of coffee products. See Tr. Trans 22:18-19 and 39:24-40:3. The Court found "based on the distinctive packaging and separate retailing channels of the parties' respective products, that an ordinary purchaser is very unlikely to mistake Defendant's 'Mr. Charbucks Blend' or 'Charbucks Blend' product for one offered by Starbucks, whether or not that person is highly discriminating." Starbucks, 2005 WL 3527126, at *6.

For substantially the reasons discussed in the Court's December 2005 Decision in connection with the Court's consumer sophistication finding in connection with its trademark infringement analysis, the Court finds that the consumer sophistication factor also favors Defendant in the dilution-by-blurring context.

Thus, while, as in the FTDA analysis, several of the relevant factors favor Plaintiff, the record is insufficient to establish Plaintiff's right to injunctive relief because it fails to demonstrate the requisite likelihood of dilution by blurring in light of the similarity of the marks and predatory intent factors which, as explained above, weigh strongly in Defendant's favor. For these reasons, and for the reasons explained in the December 2005 Decision, Plaintiff

has failed to demonstrate that Defendant's use of the "Mr. Charbucks" mark is likely to impair the distinctiveness of Starbucks' mark, and thus to blur Plaintiff's marks within the meaning of New York anti-dilution law.

Dilution by Tarnishment Claims

Dilution by tarnishment "is usually found where a distinctive mark is depicted in a context of sexual activity, obscenity, or illegal activity." Deere & Co., 41 F.3d at 44. The amended FTDA defines dilution by tarnishment as "an association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C) (emphasis added). In its December 2005 Decision, the Court carefully considered all of Plaintiff's phone survey evidence and expert conclusions before concluding that Plaintiff had shown neither actual dilution under the former version of the FTDA nor a likelihood of dilution under New York state law. See Starbucks, 2005 WL 3527126 at *9. The utility of the "Mr. Charbucks" mark to Defendant depends on the association being one to something that is attractive or consumer-appealing. As explained in the December 2005 Decision, the survey comments about the characteristics of a product called "Charbucks" are not necessarily negative and the record lacks sufficient evidence of inferior quality to sustain Plaintiff's burden of demonstrating that the association of Defendant's mark with Plaintiff's is likely to harm the reputation of Plaintiff's marks.[4]

---

[4] In its December 2005 Decision, the Court noted that the survey used the open-ended question "If the name 'Charbucks' were used for a type of coffee, how would you describe the coffee?," and found that only 6.3% of

On remand, Starbucks places particular emphasis on a newly-calculated statistic indicating that, of the 30.5% of respondents who had an immediate association between "Charbucks" and "Starbucks," 62% said they would have a negative impression of a coffee called "Charbucks." This statistic says nothing, however, about the likelihood that those respondents' negative impression of a coffee called "Charbucks" would affect detrimentally their perception of Starbucks. It would be just as reasonable to conclude that their negative impressions of a hypothetical coffee named "Charbucks" were based on their strong allegiance to Starbucks, something Defendant observes by noting that 71% of those respondents had a positive impression of Starbucks. Additionally, the record at trial established that Defendant's product is a high-quality coffee with rigorous quality control mechanisms. See Tr. Trans. at 82:7-84:15, 86:8-87:1, 89:6-15; see Starbucks, 2005 WL 3527126, at *6. Thus, looking beyond the inferences argued from the hypothetical phone survey, the record demonstrates that the Defendant's actual "Mr. Charbucks" coffee product is of such a quality that its association with Starbucks is unlikely to be damaging.

---

the survey respondents provided what was characterized as a "generally negative" response. See Starbucks, 2005 WL 3527126, at *9. Further, while 15.2% of respondents described a hypothetical coffee named Charbucks as "charred," "burnt," "bitter" or "smokey," and 34.9% described the hypothetical flavor as "strong," "dark," "black," or "rich-flavoured," many of those respondents expressed a favorable view of a coffee with these qualities. Id. Other reported responses to the open-ended question included "general positive comments" (7.9%) and "special/original/expensive" (4.7%). Id. "Don't know" was another very popular response, at 22.6%. Id. With respect to the linkage between Starbucks and Charbucks, the court found that survey respondents generally described it as a "joke" or a "ripoff," and none of the respondents appeared to have incorporated negative references to Starbucks products in their responses to the open-ended question regarding "Charbucks." Id.

For these reasons, and for substantially the reasons discussed in the December 2005 Decision, Plaintiff has not demonstrated the likelihood of dilution by tarnishment that is required to support injunctive relief under either the FTDA or New York law.

Trademark Infringement Claims

After having balanced the Polaroid factors as detailed in the December 2005 Decision, and for substantially the reasons detailed in the December 2005 Decision, the Court concludes that Plaintiff is unable to prove the requisite likelihood of consumer confusion as to source, sponsorship, or association of Defendant's goods with the Starbucks mark. Accordingly, Plaintiff's trademark infringement claim under the Lanham Act, as well as its common law unfair competition claim, which is analyzed under the same legal standard as a claim for trademark infringement under the Lanham Act, fail.

CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to carry its burden of demonstrating its entitlement to relief under the amended FTDA, and that Plaintiff has failed to meet its burden of demonstrating entitlement to injunctive relief under the anti-infringement provisions of the Lanham Act or the New York law of unfair competition. The Court adopts and reinstates its December 2005 findings of fact and conclusions of law with respect to Plaintiff's federal trademark infringement and unfair competition claims brought pursuant to the Lanham Act, Plaintiff's state trademark dilution claims brought pursuant to New

York Gen. Bus. Law § 360-l, and Plaintiff's unfair competition claim under the common law.

Accordingly, judgment will be entered in Defendant's favor on all counts and the Clerk of Court is respectfully requested to close this case. This Opinion and Order resolves docket entry no. 100.

SO ORDERED.

Dated: New York, New York
June 5, 2008

_____
LAURA TAYLOR SWAIN
United States District Judge