UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Starbucks Corporation, and ) <br> Starbucks U.S. Brands, LLC ) <br> ) <br> v. ) <br> ) <br> Wolfe's Borough Coffee, Inc. ) <br> ) <br> ) | No. 01-CV-5981 (LTS)(THK) |

## WOLFE'S BOROUGH'S RESPONSE BRIEF ON SECOND REMAND

This second remand requires consideration of a single question: under the Trademark Dilution Revision Act, 15 U.S.C. § 1125(c), are Defendant's, Black Bear's, marks likely to blur Starbucks marks? The Court of Appeals remanded for three reasons: first, it concluded that the TDRA, unlike the previous version of the federal dilution statute and N.Y. Gen. Bus. Law § 360-*l*, does not require "substantial similarity";[1] second, the Court of Appeals decided that this Court may have placed too much emphasis on the lack of actual confusion when it determined there was no evidence of actual association; third, the Court held that it was irrelevant to the blurring analysis that Black Bear's principal, Jim Clark, harbored no bad faith. The Court of Appeals' opinion does not require this Court to reach any particular result but only to redo the blurring analysis without <u>requiring</u> substantial similarity and by ignoring the lack of actual confusion when determining if there is any evidence of actual association

---

[1] Black Bear does not agree with this conclusion. While the degree of similarity is but one of several factors that may be considered under the TDRA, the overriding question is whether the "association arising from the similarity between a mark or trade name and a famous mark [] impairs the distinctiveness of the famous mark." 15 U.S.C. §1125(c)(2)(B). The theory behind by blurring has always been that similarity between the marks will gradually lessen the distinctive force of the famous mark. Without such similarity, there can be no blurring, and nothing in the TDRA or its legislative history indicates an intent to rewrite the entire theory that underlies the tort. Given the Court of Appeals' decision, however, Black Bear will reserve its challenge to this ruling to a later appeal if necessary.

between the marks.  The Court should therefore come to the same conclusion it has already reached twice.  Blurring is, by definition, a lessening of the power of a senior mark caused by (1) an association arising from (2) similarity between the marks, see 15 U.S.C. § 1125(c)(2)(B), but in this case the marks as they appear in commerce are profoundly dissimilar and Starbucks cannot show any evidence of an association between the marks.

### "Minimal" Similarity Should Weigh Strongly Against Finding Blurring

Starbucks begins by arguing that despite this Court's and the Court of Appeal's conclusion that the marks are only "minimally similar," the similarity factor actually weighs in favor of a blurring finding.  See Starbucks' Br. at 4-6.  The articulated reasons are difficult to decipher, but seem to be the somewhat circular contention that the other factors (the distinctiveness of the Starbucks marks, Black Bear's supposed intent to create an association between the marks) allow even minimal similarity to make it more likely blurring will take place.  See id. at 5-6.  Starbucks does not explain its point and, not surprisingly, does not back it up with any citation to authority.  The Court of Appeals did not so hold, concluding only that "some – but not substantial – similarity between the subject marks may be sufficient in some cases" to result in a likelihood of dilution by blurring.  See Court of Appeals Op. at 9 n.3 (emphasis added).

Starbucks tries to but cannot dodge the obvious effect of this Court's conclusion -- a conclusion with which the Court of Appeals agreed – that as the marks are presented in commerce there is very little similarity between them.  That factor undoubtedly makes blurring less likely, because the whole theory of blurring is that "an association arising from the similarity," 15 U.S.C. § 1125(c)(2)(B) (emphasis added), can impair the distinctiveness of a famous mark.  If there is little similarity, an association that results in blurring is less likely.

See 4 McCarthy on Trademarks § 24.117 at 24-351 ("For blurring . . . to be likely, the marks must at least be similar enough that a substantial segment of the target group of customers sees the two marks as essentially the same. Blurring is *one mark* seen by customers as now identifying two sources."). While the similarity factor is no longer determinative after the Court of Appeals' decision,[2] it is still nonetheless extremely important in the blurring analysis – because this factor underlies the central theory of the tort and the text of the TDRA. See id. ("The statutory factor referring to the 'degree of similarity' between the conflicting marks indicates that exact identity is not required by the statute itself for blurring to be likely, but, as indicated below, without identity or near identity, the injury of blurring is unlikely.").

### There Is No Evidence of an Actual Association Between the Marks

Starbucks contends "there is overwhelming, uncontroverted evidence of actual association between 'Charbucks' and the Starbucks Marks." See Starbucks Br. at 6. The only evidence it points to, however, is the survey conducted by its expert, Mr. Mitofsky. The survey demonstrated only that 30.5% of respondents thought of the word Starbucks when they heard Charbucks. See Pl. Exh. 10, Tab C. That data point falls far short of actual association, however. First, it cannot be emphasized enough that the Mitovsky telephone crucially, the survey does not measure an association between the marks as they are presented to consumers. As the Court of Appeals noted in its opinion, the marks must be assessed by considering the differing packaging and contexts in which the marks are presented to consumers. See Ct. of App. Op. at 8-9. The Court of Appeals affirmed this Court's finding that those contexts are "different in imagery, color, and format." See id. at 8. To constitute cognizable evidence on the level of association between the marks, a survey must account for

---

[2] Again, Black Bear does not agree with, and plans to appeal if necessary, the Court of Appeals' decision on the similarity issue.

those differences. A survey that fails to do so should be ignored, or, at the very least, accorded negligible evidentiary weight. <u>See</u> 6 McCarthy on Trademarks §32.163 ("[T]he closer the survey methods mirror the situation <u>in which the ordinary person would encounter the trademark,</u> the greater the evidentiary weight of the survey results.") (emphasis added). That has been the consistent rule in this Court. Recently, in <u>THOIP v. Walt Disney Company</u>, 690 F. Supp. 2d 218, 238-39 (S.D.N.Y. 2010), this Court ruled inadmissible a survey that did not represent "actual marketplace conditions," because, in part, it did not show respondents t-shirt neck labels and hang tags that conveyed source information.

Indeed, this Court has a long history of rejecting precisely the type of word-association survey that Starbucks asserts is overwhelming evidence of "actual association." In <u>Juicy ZCouture Inc. v. L'Oreal USA, Inc.</u>, 2006 WL 1012939, at *25 (S.D.N.Y. Apr. 19, 2006), the Court compared two surveys, rejecting one and crediting the other. The rejected survey was similar to Starbucks' survey: it involved showing consumers the text of the allegedly infringing marks and asking if they could identify a source. <u>See id.</u> at *24.[3] The Court concluded that the survey had no evidentiary value because in the marketplace the infringing marks were not presented by themselves (as they were in the survey), but instead surrounded by the defendant's other marks and other source signifiers, <u>see id.</u> at *25, in much the same way as Black Bear's marks are surrounded by Black Bear's name and imagery dissimilar from Starbucks' familiar and consistent coloring and logo. Therefore, according to the <u>Juicy ZCouture</u> Court, the survey was a nothing more than a "word association test" that

---

[3] If anything, Starbucks' telephonic survey is weaker because it only asked what came to mind upon hearing the word "Charbucks." Starbucks' survey also failed to include a control group and failed to exclude populations that are not likely to purchase products from either party, such as non-coffee drinkers, <u>see</u> Tr. Trans. 196:6-19, two additional failings that the this Court has noted in decisions rejecting survey results. <u>See</u> <u>THOIP</u>, 690 F. Supp. 2d at 240-41; <u>Juicy ZCouture</u>, 2006 WL 1012939 at *25.

4

presented no "meaningful information" See Juicy ZCouture, 2006 WL 1012939 at *26. WE Media, Inc. v. Gen'l Elec. Co., 218 F. Supp. 2d 463, 474 (S.D.N.Y. 2000), similarly rejected a survey that simply presented survey respondents with "word lists" instead of "us[ing] pictures or advertisements that approximate what a potential customer would encounter in making her television-viewing."

These cases are not outliers. There are many others reaching the same conclusion: a survey has no probative value when it plucks the marks in question out of context. See, e.g., Am. Footwear Corp. v. Gen'l Footwear Co. Ltd., 609 F.2d 655, 660 n.4 (2d Cir. 1979) (upholding district court's rejection of survey where display of junior mark was unaccompanied by mark holder's name, unlike in real-world advertising by the mark holder); Vista Food Exch., Inc. v. Vistar Corp., 2005 WL 2371958, at *5 (E.D.N.Y. Sept. 27, 2005) (disregarding survey that improperly removed coloring, design, and other facets of marks in question, and citing numerous cases to the same effect); Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 264 (5th Cir. 1980) (concluding, in likelihood of confusion context, that merely asking customers what the "Domino's Pizza" mark brought to mind, "degenerates into a mere word-association test entitled to little weight," presenting no "meaningful evidence").

Moreover, the Mitofsky survey's failings go beyond simply divorcing the marks from the contexts in which consumers view them. The survey did not even accurately convey what Black Bear's marks were, leaving off "Mister" or "Blend." The Court of Appeals squarely rejected Starbucks' contention that the words "Mister" or "Blend," which form an integral part of Black Bear's marks, should be ignored. See Ct. of App. Op. at 10. It is difficult to see how Starbucks' survey is "overwhelming and uncontroverted" evidence of actual association between Starbucks marks and Black Bear's, when the survey on which this assertion is based

5

doesn't even include Black Bear's actual marks. Indeed, in <u>Playtex Prods., Inc. v. Georgia-Pacific Corp.</u>, 390 F.3d 158, 167-68 (2d. Cir. 2004), the Second Circuit concluded that such truncations of marks in a survey rendered it valueless and incapable of even raising a genuine issue of fact on dilution.

One need go no further than the trial testimony of Starbucks' own expert, to conclude that the survey presented by Starbucks yields no evidence on actual association. Mr. Mitofsky conceded that his telephone survey did nothing more than gauge "the reaction to the name Charbucks," and is not appropriate for measuring reaction to "other visual cues." Tr. Trans. at 181:6-9. In order to measure actual association between the marks as customers see them, that is precisely what Starbucks should have tested – the mark as it appears in commerce with all of its attendant imagery, color and visual dimension. Since it has not, Starbucks has presented no evidence of any actual association between the marks.[4]

### Balancing of the Factors: There Is No Association Arising from Similarity Between the Marks and Thus No Likelihood of Dilution

Starbucks argues the Court should employ a sliding scale approach whereby the strength of one factor in the blurring analysis may "make up for a weakness in one of the other factors." Starbucks Br. at 7. Black Bear agrees wholeheartedly with this general proposition. It has long been the rule that a court's balancing of factors in a multi-factor test is not a simple arithmetic matter of adding up factors for and factors against and deciding

---

[4] Citing <u>Jada Toys, Inc. v. Mattel, Inc.</u>, 518 F.3d 628, 636 (9th Cir. 2008), Starbucks posits that the Ninth Circuit has "found 'actual association'" in a case with a survey showing even a lower level of "association" than shown in the Mitofsky survey. Starbucks' citation is misleading. The survey evidence in <u>Jada Toys</u> was not a simple word-association test that asked for the first thing the respondents thought of, like Starbucks' survey. Instead, the <u>Jada Toys</u> survey found that 28% of respondents thought that the senior mark holder, Mattel, actually produced a toy with the same name as the junior mark. <u>See id.</u> That is a far higher figure than the 3.1% of respondents who believed Starbucks could have been a possible source of a Charbucks product. <u>See</u> Pl. Exh. 10, Tab C, Question 9.

upon a "winner."  See Paddington Corp. v. Attiki Importers & Distrib., 996 F.2d 577, 584 (2d Cir. 1993) (discussing Polaroid).  Not surprisingly, however, Starbucks attempts to argue that the factors supporting it are the ones that matter most in such a sliding scale.  According to Starbucks, the distinctiveness of its marks along with the similar markets covered by the parties should excuse the dissimilarity highlighted by this Court and the Court of Appeals.  See Starbucks Br. at 7-8.  According to Starbucks, if the Court were to conclude that there was no likelihood of dilution just based on the lack of similarity, it would run afoul of the Second Circuit's admonition to avoid placing "undue significance" on the similarity factor.  See id. at 8.  This is just wrong.

There is no danger of the Court crossing the Second Circuit.  Again, the critical question is whether there is "association arising from the similarity between a mark . . . and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B) (emphases added).  Thus, Starbucks must prove some level of association to prevail, see 4 McCarthy on Trademarks § 24.116 at 24-345 ("If the consumer does *not* make the required 'association' between the conflicting marks, then the injury of blurring is *not* likely."), and further must show that the association arises from the similarity between the marks, see id. at 24-341 ("The required 'association' must be created solely by the similarity of the conflicting marks, not from other source.").  On those two critical elements, similarity and association, Starbucks case utterly fails.  There is, as recognized by this Court and the Second Circuit, no meaningful similarity between the marks, and, as explained above, there is no cognizable evidence of association between the marks.

Starbucks does not explain how its marks could be impaired by a dissimilar mark that customers do not associate with the Starbucks marks.  Instead, it offers inapposite cases like

7

Hershey Co. v. Art Van Furniture, Inc., 2008 WL 4724756, at *15 (E.D. Mich. Oct. 24, 2008), and Visa Int'l Serv. Ass'n v. JSL Corp., 590 F. Supp. 2d 1306, 1317-18 (D. Nev. 2008), in which there was a strong similarity between the marks, among other factors.  While the Court of Appeals has decided that dissimilarity alone is not enough to defeat a blurring claim, such dissimilarity still nonetheless weighs extremely heavily against a finding of blurring.  When that dissimilarity is coupled with no cognizable evidence of any association between the marks, blurring simply isn't possible, much less likely.

Finally, the list of factors in the TDRA are non-exhaustive, see Ct. of App. Op. at 7, allowing the Court to consider other relevant information.  Accordingly, the Court should also consider Starbucks' failure to put forth any evidence of any actual blurring despite the long period of co-existence of the marks. This Court's task it to determine whether blurring is likely going forward.  Surely, the best guide as to what may happen in the future is what has happened in the past.  Obviously, the TDRA reflects Congress' intent to allow famous mark holders to prevent dilution before it actually occurs, but this case is not the typical one where the likelihood of dilution is litigated early in the life of the junior mark such that there is no history of co-existence.  If the lack of actual confusion during a long period of co-existence is "a powerful indication that there is no . . . likelihood of confusion," see Ct. of App. Op. at 25, the same should hold true of dilution.  Thirteen years have passed since Mr. Charbucks and Charbucks Blend marks were used in commerce.  If blurring – the impairment of the Plaintiff's distinctive mark – were likely, it would have occurred by now.

### Conclusion

Starbucks' only remaining claim is that Mr. Charbucks and/or Charbucks Blend will likely blur its marks, i.e., are likely to create an "association arising from the similarity

between [the marks] that impairs the distinctiveness" of Starbucks' marks.  15 U.S.C. § 1125(c)(2)(B).  Yet, Starbucks cannot prove (1) there is any similarity between its marks and Black Bear's, or that (2) consumers recognize any association between the marks as they are actually presented in a commercial setting.  Further, it has been unable to show any actual effect on its marks during the decade plus Black Bear has been using its Mr. Charbucks and Charbucks Blend marks.  Thus, the Court should reaffirm its previous decision and grant judgment to Black Bear on Starbuck's federal blurring claim.

        Respectfully submitted,

        WOLFE'S BOROUGH COFFEE, INC.

        By its attorneys,
        SHEEHAN PHINNEY BASS + GREEN, P.A.

Dated:  November 12, 2010        By:  /s/  Christopher Cole
        Christopher Cole (Bar No. 080136)
        1000 Elm Street, P.O. Box 3701
        Manchester, NH  03105-3701
        (603) 627-8223

## CERTIFICATE OF SERVICE

      I hereby certify that on this 12th day of November, 2010, I caused a true and correct copy of the foregoing Wolfe's Borough's Response Brief On Second Remand to be served via first-class mail, postage prepaid, on counsel for Plaintiffs:

Mark N. Mutterperl, Esquire
Jessica S. Parise, Esquire
Fulbright & Jaworski, LLP
666 Fifth Avenue
New York, NY  10103
(212) 318-3000

        /s/ Christopher Cole
        Christopher Cole