UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STARBUCKS CORPORATION, a Washington
corporation; and STARBUCKS U.S. BRANDS
INC., a California corporation,

       Plaintiffs,
-v-

WOLFE'S BOROUGH COFFEE, INC., a New
Hampshire corporation d/b/a BLACK BEAR
MICRO ROASTERY,

       Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2 3 DEC 2011

No. 01 Civ. 5981 (LTS)(THK)

## OPINION AND ORDER

APPEARANCES:

FULBRIGHT & JAWORSKI L.L.P.
 By: Mark N. Mutterperl, Esq.
   Jessica S. Parise, Esq.
666 Fifth Avenue
New York, NY 10103

*Attorneys for Plaintiffs*

SHEEHAN PHINNEY BASS
& GREEN, P.A.
 By: Christopher Cole, Esq.
1000 Elm Street, P.O. Box 3701
Manchester, NH 03105-3701

*Attorneys for Defendant*

LAURA TAYLOR SWAIN, United States District Judge

This action is now before the Court for resolution of the claims of Plaintiffs Starbucks Corporation and Starbucks U.S. Brands LLC (collectively "Plaintiff") against Defendant Wolfe's Borough Coffee, Inc., d/b/a Black Bear Micro Roastery ("Defendant" or "Black Bear") for injunctive relief, brought pursuant to the federal Trademark Dilution Act as amended, 15 U.S.C. §§ 1125(c)(1), (c)(2)(B) (the "FTDA"). The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(a) and 1338(a).

### BACKGROUND

Soon after this Court issued its initial Opinion and Order addressing Plaintiff's claims, Starbucks Corp. v. Wolfe's Borough Coffee, Inc., No. 01 Civ. 5981(LTS)(THK), 2005 WL 3527126 (S.D.N.Y. Dec. 23, 2005) ("Starbucks I"), Congress passed the Trademark Dilution Revision Act of 2005 ("TDRA") amending the FTDA. The United States Court of Appeals for the Second Circuit vacated Starbucks I in light of the enactment of the TDRA. Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 477 F.3d 765 (2d Cir. 2007) ("Starbucks II"). Having reconsidered Plaintiff's Lanham Act trademark dilution claim in light of the TDRA, the Court found that Plaintiff had failed to carry its burden of demonstrating its entitlement to relief on any of its federal and state trademark infringement, dilution and unfair competition claims and ordered that judgment be entered in Defendant's favor. Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 559 F. Supp. 2d 472 (S.D.N.Y. 2008) ("Starbucks III"). Plaintiff appealed.

On appeal, the Second Circuit affirmed Starbucks III with respect to Plaintiff's Lanham Act trademark infringement, state dilution and state unfair competition claims. Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 101 (2d Cir. 2009) ("Starbucks

IV"). The Second Circuit vacated the Court's judgment with respect to Plaintiff's federal trademark dilution claim, however, and remanded the case for further proceedings on Plaintiff's federal claim of dilution by blurring. Id. In so doing, the Second Circuit found inappropriate this Court's reliance on pre-TDRA Second Circuit decisions requiring a showing of substantial similarity in connection with federal trademark dilution claims, id. at 107, observed that this Court "may also have placed undue significance on the similarity factor in determining the likelihood of dilution in its alternative [dilution] analysis," id., and held that the absence of bad faith is not relevant to the TDRA analysis of intent to associate, id. at 109.

The parties submitted additional briefs following the remand. The Court has considered thoroughly all of the parties' arguments and, for the following reasons, finds that Plaintiff has failed to carry its burden of demonstrating its entitlement to relief under the FTDA.

The Court's findings as to the material background facts of this matter, as required by Rule 52 of the Federal Rules of Civil Procedure, are detailed in Starbucks I.

## DISCUSSION

The one remaining question on remand is whether Defendant's use of its "Mister Charbucks," "Mr. Charbucks" and "Charbucks Blend" marks (the "Charbucks Marks") for one of its blended coffee products is likely to dilute Plaintiff's "Starbucks" marks by blurring. The FTDA provides, in pertinent part, that

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring . . . of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C.A. § 1125(c) (West 2009). "Dilution by blurring" is an "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C.A. § 1125(c)(2)(B) (West 2009). Blurring is "the whittling away of the established trademark's selling power and value through its unauthorized use by others." Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 111 (2d Cir. 2010) (internal quotations and citations omitted). In other words, blurring "is the loss of a trademark's ability to clearly identify one source." Miss Universe, L.P. v. Villegas, 672 F. Supp. 2d 575, 591 (S.D.N.Y. 2009) (citing Hormel Foods Corp. v. Jim Henson Prods., Inc., 73 F.3d 497, 506 (2d Cir. 1996)); see also New York Stock Exchange v. New York, New York Hotel LLC, 293 F.3d 550, 558 (2d Cir. 2002) ("Blurring occurs 'where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product'"); Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 265 (4th Cir. 2007) (Blurring involves an "association [that] is likely to impair the distinctiveness of the famous mark" and, "[i]n the context of blurring, distinctiveness refers to the ability of the famous mark uniquely to identify a single source and thus maintain its selling power.").

The FTDA identifies six non-exclusive factors for consideration in the blurring analysis: "(i) [t]he degree of similarity between the mark or trade name and the famous mark; (ii) [t]he degree of inherent or acquired distinctiveness of the famous mark; (iii) [t]he extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (iv) [t]he degree of recognition of the famous mark; (v) [w]hether the user of the mark or trade name intended to create an association with the famous mark; [and] (vi) [a]ny actual association

between the mark or trade name and the famous mark." 15 U.S.C.A. § 1125(c)(2)(B) (West 2009).

These six factors are not exhaustive, and the court may consider all evidence relevant to the ultimate question of whether the junior mark is likely to be associated with a famous mark in a way that impairs the famous mark's distinctiveness. Id.; Starbucks IV, 588 F.3d at 109; cf. Playtex Products, 390 F.3d at 62 ("[D]istrict courts generally should not treat any single factor as dispositive; nor should a court treat the inquiry as a mechanical process by which the party with the greatest number of factors wins.") (citing Paddington Corp. v. Attiki Importers & Distrib., 966 F.2d 577, 584 (2d Cir. 1993)). In the end, the Court's analysis of a blurring claim "must ultimately focus on whether an association, arising from the similarity between the subject marks, 'impairs the distinctiveness of the famous mark.'" Starbucks IV, 588 F.3d at 109 (internal citation omitted).

The Statutory Factors

At this stage of the litigation, there is no dispute that four of the six factors weigh in Plaintiff's favor. They are: the distinctiveness of Plaintiff's marks, Plaintiff's exclusivity of use, the high degree of recognition of Plaintiff's marks, and Defendant's intent to associate its marks with the Plaintiff's marks. Starbucks IV, 588 F.3d at 106-110. On remand, this Court focuses on the degree of similarity of the marks and the evidence of actual association between the marks.

Similarity of the Marks

When determining similarity for purposes of a dilution claim, courts must consider "the differences in the way the [marks] are presented" in commerce. Starbucks IV, 588 F.3d at 106 (citing Playtex Products, Inc. v. Georgia-Pacific Corp., 390 F.3d 158, 167-68 (2d

Cir. 2004)). Here, there is no evidence that Charbucks is ever used as a standalone term, and it is unlikely that Charbucks "will appear to consumers outside the context of its normal use." Starbucks IV, 588 F.3d at 106. In commerce, the term Charbucks is always preceded or followed by the terms "Mister," "Mr." or "Blend." Defendant uses the Charbucks marks in conjunction with its Black Bear mark, a large black bear, or the figure of a walking man above the words "Black Bear Micro Roastery." Starbucks IV, 588 F.3d at 106. These marks are not similar to Plaintiff's highly recognizable siren mark, which does not appear on the Charbucks product packaging. Id. Further, Defendant's packaging, which uses an entirely different color scheme from that employed by Starbucks, identifies Black Bear as a "Micro Roastery" located in New Hampshire. Id. Where the Charbucks marks are used on Black Bear's website, they are accompanied by Black Bear's domain name, www.blackbearcoffee.com. Id. Thus, although the term "Ch"arbucks is similar to "St"arbucks "in sound and spelling" when compared out of context, the marks are only minimally similar as they are presented in commerce. Id.

    Plaintiff cites to decisions finding other marks sufficiently similar to the Starbucks marks to create a likelihood of dilution. Plaintiff argues that a finding of dilution is likewise warranted in the instant case. (See Pl.'s Opening Brief on Second Remand, pg. 5 n.6, citing Bell v. Starbucks U.S. Brands Corp., 389 F. Supp. 2d 766 (S.D. Tex. 2005) (prohibiting use of "Starbock" and "Star Bock" marks for beer), aff'd 205 Fed. Appx. 289 (5th Cir. 2006), and Starbucks Corp. v. Lundberg, No. Civ. 02-948-HA, 2005 WL 3183858 (D. Or. Nov. 29, 2005) (finding "extensive and obvious" similarities between "Sambuck's" and "Starbucks'").) In those cases, however, the Court found dilution where the junior marks were used on their own, without contextual features distinguishing the junior mark from the senior mark. See, e.g., Bell, 389 F. Supp. 2d at 780 (finding that "Plaintiff's use of the words 'Star Bock' and

'Starbock' alone violate numerous state and federal laws" but that "the 'Star Bock Beer' logo with the 'Born in Galveston' wording as shown in Plaintiff's Exhibit 1, does not violate any trademark or unfair competition laws"). Here, the Charbucks marks are used exclusively with terms "Mister," "Mr." or "Blend" and in contexts dissimilar from the contexts in which the Starbucks marks are used. The Court will not "ignore relevant evidence" of such distinguishing contextual features. Starbucks IV, 588 F.3d at 107. The minimal degree of similarity between the marks as they are used in commerce weighs in Defendant's favor.

### Actual Association with the Famous Mark

Plaintiff has proffered, as evidence of actual association, the results of a telephonic survey in which respondents were asked to react to the terms "Charbucks" and "Starbucks." Of the 600 respondents surveyed, 30.5% said that they associated the term "Charbucks" with "Starbucks," and 9% said they associated the term "Charbucks" with coffee. Starbucks, 2005 WL 3527126, *9. When asked to name a company or store that they thought might "offer a product called 'Charbucks,'" 3.1% of respondents said Starbucks. Starbucks, 2005 WL 3527126, *5. These results constitute evidence of actual association.

The results of Plaintiff's survey show some association between the terms Charbucks and Starbucks. However, the survey did not measure how consumers would react to the Charbucks marks as they are actually packaged and presented in commerce. Further, the percentage of respondents who indicated a mental association between the marks is relatively small. In the cases relied on by Plaintiff, survey respondents typically made an association between the marks between 70% and 90% of the time. See e.g., Visa Intern., 590 F. Supp. 2d at 1319 (73% of respondents said EVISA reminded them of Visa); Nike, Inc. v. Nikepal Intern., Inc., No. 2:05-cv-1468-GEB-JFM, 2007 WL 2782030, *4 (E.D. Cal. Sep. 18, 2007) (87% of

respondents said Nikepal reminded them of Nike); Lundberg, 2005 WL 3183858, at *8 (85% of respondents thought of Starbucks when shown "Sambuck's Coffeehouse" and 70% said they thought of Starbucks because the marks were so similar). Here, even stand-alone use of the core term "Charbucks" drew only a 30.5% association response.

Plaintiff invokes the Ninth Circuit's decision in Jada Toys v. Mattel, Inc. to demonstrate that lower survey numbers (28%) have been found significant. Jada Toys v. Mattel, Inc., 518 F.3d 628, 636 (9th Cir. 2008). In Jada Toys, the survey asked respondents who they thought "puts out or makes" a product called HOT RIGZ. Id. Twenty-eight percent of those responding said that they thought it was either made by Mattel, by the company that makes HOT WHEELS, or that whoever made it required Mattel's permission to do so. Id. The Ninth Circuit found that these survey results showed "significant evidence of actual association." Id. By contrast, when asked a similar question, only 3.1% of those responding to the survey in this case said that they thought Plaintiff offered a product called Charbucks. Starbucks I, 2005 WL 3527126, at *5. While Jada Toys does confirm that association numbers in the lowest third can be significant, it does little to bolster Starbucks' argument that a single-digit source confusion indicator produced by a survey that did not present the relevant terms in context is probative of a likelihood of dilution by blurring.

The Court finds, after careful consideration of the survey results and methodology, that the actual association factor weighs no more than minimally in Plaintiff's favor.

Likelihood of Dilution by Blurring

The ultimate analytical question before the Court is not simply whether there has been an association between the marks. As the Second Circuit explained in Starbucks IV, the

ultimate analytical question presented by a dilution-by-blurring claim is whether there is an association, arising from the similarity of the relevant marks, that impairs the distinctiveness of the famous mark. 588 F.3d at 109. The Court evaluates the non-exclusive statutory factors in light of that ultimate question.

The Court is also mindful of the purposes and core principles of trademark law when analyzing a blurring claim. It is settled law that trademarks do not create a "right-in-gross" or an unlimited right at large. American Footwear Corp. v. General Footwear Co. Ltd., 609 F.2d 655, 663 (2d Cir. 1979); see also 4 McCarthy on Trademarks § 24:11 (4th Ed. 2010) (collecting cases). Federal anti-dilution law should not be read to "prohibit all uses of a distinctive mark that the owner prefers not be made." Nabisco Inc. v. P.F. Brands, Inc., 191 F.3d 208, 224 n.6; see also 4 McCarthy on Trademarks § 24:67 ("[N]o antidilution law should be so interpreted and applied as to result in granting the owner of a famous mark the automatic right to exclude any and all uses of similar marks in all product or service lines.") Antidilution law has been called "a scalpel, not a battle axe," and should be applied with care after rigorous evidentiary examination by the courts. 4 McCarthy § 24:67.

As previously explained, the distinctiveness, recognition, and exclusivity of use factors weigh in Plaintiff's favor. Indeed, Plaintiff's evidence on all three of these factors is strong. None of the three, however, is dependent on any consideration of the nature of the challenged marks or any defendant's use of any challenged mark. Thus, although these factors are significant insofar as they establish clearly Plaintiff's right to protection of its marks against dilution, they are not informative as to whether any association arising from similarity of the marks used by Defendant to Plaintiff's marks is likely to impair the distinctiveness of Plaintiff's marks.

A fourth factor – intent to associate – also weighs in Plaintiff's favor, as Defendant's principal testified during trial that, by using the term Charbucks, he meant to evoke an image of dark-roasted coffee of the type offered by Starbucks.

Similarity of the marks and association between the marks are obviously important factors. The statutory language leaves no doubt in this regard – dilution "is <u>association arising from the similarity</u> between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C.A. § 1125 (c)(2)(B) (West 2009). It is thus appropriate to examine carefully, in considering the significance of both the evidence of similarity and the evidence of actual association, the degree to which any likelihood of dilution by blurring has been shown to arise from similarity between Defendant's marks and those of Plaintiff. As explained above, the marks being compared in this case are only minimally similar as they are presented in commerce, and the evidence of association weighs no more than minimally in Plaintiff's favor.

After considering all of the evidence and noting the dissimilarity of the marks as used in commerce, the weakness of the survey evidence, and the fact that consumers encounter Defendant's Charbucks term only in conjunction with other marks unique to Defendant, the Court holds that the Charbucks marks are only weakly associated with the minimally similar Starbucks marks and, thus, are not likely to impair the distinctiveness of the famous Starbucks marks. In other words, Plaintiff has failed to carry its burden of proving that Defendant's use of its marks, as evidenced on the record before the Court, is likely to cause dilution by blurring.

CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to carry its burden of demonstrating its entitlement to relief under the amended FTDA. Plaintiff's request for an injunction is denied. The Clerk of Court is respectfully requested to enter judgment in Defendant's favor and close this case. This Opinion and Order resolves docket entry no. 122.

SO ORDERED.

Dated: New York, New York
December 23, 2011

_____
LAURA TAYLOR SWAIN
United States District Judge